[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11848
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 28, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00091-CR-01-ODE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

PATRICK ANDERSON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 28, 2008)**

ON PETITION FOR REHEARING

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Patrick Anderson requests reconsideration of our earlier opinion in which we

vacated his sentence of three years of probation, including home confinement for six months, based on his plea of guilty to one count of insider trading. See 15 U.S.C. §§ 78j(b), 78ff(a); 17 C.F.R. § 240.10b-5. We concluded that Anderson's sentence, which was below the guideline range of 18 to 24 months of imprisonment, was unsupported by extraordinary circumstances. The Supreme Court recently abrogated that test and ruled that although appellate courts may still "consider the extent of the deviation," they "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance" from the Guidelines. Gall v. U.S., 128 S. Ct. 586, 595, 597 (2007). We grant Anderson's petition for rehearing, vacate our original opinion, and substitute this opinion, which affirms Anderson's sentence.

## I. BACKGROUND

Anderson acquired information through his position as a vice-president of the Tucker Federal Bank, that the parent company of the bank, Eagle Bank, planned to merge with R.B.C. Centura Bank. In a series of 18 stock transactions made about one month before the merger was publicly announced, Anderson purchased 15,000 shares of Eagle Bank. Once the merger was publicly announced, Anderson profited between $9 to $17 a share, for a total profit of approximately $135,000. Five to six months later, the Securities and Exchange Commission

deposed Anderson about his stock purchases. Anderson admitted that he used inside information to acquire Eagle Bank stock. Anderson produced documents and reached a complete and early financial settlement with the SEC before it filed civil charges against him. Anderson paid back the $134,999.40 in profits he had earned, $16,844.75 in interest, a civil penalty of $134,999.40, and additional interest of $2,874.99. He agreed not to offset on his taxes for the amount paid to the SEC. He paid all these funds to the SEC before he learned of a criminal case. At sentencing, the government acknowledged that the criminal investigation was not started until after the civil suit had been resolved.

The government indicted Anderson for 34 counts of securities fraud, in violation of section 10(b) of the Securities Exchange Act of 1934. 15 U.S.C. §§ 78j(b), 78ff(a); 17 C.F.R. § 240.10b-5. A superseding indictment included an additional theory of liability, but otherwise charged the same counts and violations. Anderson entered a plea agreement with the government on the morning of trial and pleaded guilty to count one of the indictment that charged him with a single transaction that involved the purchase of 1,000 shares of Eagle Bank stock. The plea agreement provided that the parties stipulated to an offense level of 15 under the Sentencing Guidelines and permitted Anderson to "litigate at sentencing . . . whether he 'had no knowledge of' . . . Rule 10b-5 for the purposes of 15 U.S.C. §

3

78ff." The district court accepted Anderson's guilty plea and asked the parties to submit briefs to address whether knowledge about Rule 10b-5 affected Anderson's sentence.

Anderson's advisory guidelines range was 18 to 24 months. After the government recommended that Anderson receive a sentence of 18 months of imprisonment, Anderson argued for a probationary sentence based on his lack of knowledge about Rule 10b-5. The district court disagreed with Anderson's lack of knowledge argument, but sentenced Anderson to serve three years of probation and six months home detention. The district court based its decision on "the restitution that [Anderson] promptly made in connection with the civil claim" that the court found was a "significant penalty," and the "other very negative consequences from the fact of the civil judgment and perhaps from the specter of the criminal sentence," which included Anderson's job loss. The district court also based its decision on its being convinced that "this is something [Anderson] would never dream of doing again," that Anderson was not "one of your wheeler-dealer types," and that he "has already suffered a great deal through making amends for what he did." The government immediately "object[ed] to the sentence below the guidelines range."

## II. STANDARD OF REVIEW

4

We review the procedural and substantive reasonableness of a criminal sentence for an abuse of discretion. Gall, 128 S. Ct. at 594, 596–97. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

### III. DISCUSSION

The government challenges the substantive reasonableness of Anderson's sentence. The government makes three arguments on appeal: (1) the district court improperly weighted Anderson's settlement with the SEC for sentencing purposes; (2) the probationary sentence failed to promote respect for the law or provide deterrence; and (3) the facts in Anderson's case are "entirely different" from those in Gall and should not be governed by Gall. We affirm Anderson's sentence.

In Gall, the Court explained that a sentence free of "significant procedural error" is subject to deferential review for an abuse of discretion. 128 S. Ct. at 597. Although the Sentencing Guidelines serve as a "starting point and the initial benchmark," the district court has the authority, based on its "individualized assessment" of the facts, to weigh the factors listed in section 3553(a) and fashion a sentence outside the guidelines. Id. at 596–97. As long as the district court provides "justification . . . sufficiently compelling to support the degree of the

5

variance" from the guidelines range, id. at 597, and the term imposed adequately achieves "the purposes of sentencing stated in § 3553(a)," see United States v. Pugh, No. 07-10183, 2008 WL 253040 (11th Cir. Jan. 31, 2008), Gall requires that we affirm. The Supreme Court made clear that "a major departure [from the Guidelines range] should be supported by a more significant justification than a minor one." Gall, 128 S. Ct. at 597; Pugh, 2008 WL 253040, at *8 (quoting Gall). Further, the appellate courts should "take into account the totality of the circumstances including the extent of any variance from the Guideline range." Gall, 128 S. Ct. at 597; Pugh, 2008 WL 253040, at *9 (quoting Gall).

The district court assessed the relevant factors under section 3553(a). The district court considered Anderson's "prompt" payment of full restitution and a substantial civil penalty to the SEC and the economic hardship that the settlement necessarily imposed on him and concluded that Anderson's conduct indicated his genuine intent to make amends for his wrongdoing. See U.S.S.G. § 3E1.1 cmt. n.1(c) ("voluntary payment of restitution prior to adjudication of guilt" is an "appropriate consideration" at sentencing). The district court found relevant that the government did not begin its criminal investigation until some time after the SEC resolved the civil case against Anderson, which indicated that Anderson did not enter into an agreement with the SEC to minimize his criminal liability. The

6

district court also took into account the "other negative consequences from the fact of the civil judgment and perhaps also from the specter of the criminal sentence" which included Anderson's job loss and diminished income, as well as the deterrent effect caused by the proceedings. See 18 U.S.C. § 3553(a)(1).

Unlike in Gall, where the young drug offender was able to pursue freely a career after his collegiate involvement in an ecstacy conspiracy, Anderson, who is over 50 years old and supports college-aged children, lost his high-paying job and has been forced to relocate to obtain any employment in his field and only then at a significantly reduced salary; he still faces an uphill battle to regain his professional credibility. See U.S.S.G. § 1B1.4 (court may consider without limitation any information about defendant's background, character, and conduct). Anderson's commitments and the damage to his reputation "also lend[] strong support to the conclusion that imprisonment was not necessary to deter [him] from engaging in future criminal conduct or to protect the public from his future criminal acts." Gall, 128 S. Ct. at 602; see 18 U.S.C. § 3553(a)(2)(B). In recognition of the limitations on Anderson's marketability and employment, the district court reasonably imposed a probationary sentence and home confinement to "allow [him] to continue working." The extent of the variance from the low end of the guidelines range here was much less than in Gall and was supported by significant

7

justification. Based on <u>Gall</u>, the district court did not abuse its discretion by imposing a probationary sentence with home confinement on Anderson. <u>Gall</u>, 128 S. Ct. at 597.

## IV. CONCLUSION

Anderson's sentence is **AFFIRMED.**